# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00021-COA

**CASANDRA TRIMBLE**                                                                 **APPELLANT**

**v.**

**OKOLONA MUNICIPAL SCHOOL DISTRICT**                           **APPELLEE**

DATE OF JUDGMENT:            12/09/2024
TRIAL JUDGE:                      HON. RODNEY PURVIS FAVER
COURT FROM WHICH APPEALED:   CHICKASAW COUNTY CHANCERY
                                  COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       JASON EDWARD OWENS
ATTORNEY FOR APPELLEE:        KEVIN JERRELL WHITE
NATURE OF THE CASE:           CIVIL - OTHER
DISPOSITION:                  AFFIRMED - 06/30/2026
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     The superintendent of the Okolona Municipal School District (OMSD) recommended the non-renewal of the employment contract for OMSD's business manager, Casandra Trimble. The Board of Trustees (Board) for OMSD conducted a hearing and upheld the superintendent's recommendation. Trimble appealed the Board's decision to the Chickasaw County Chancery Court. The chancellor affirmed the Board's decision, and Trimble appealed.

¶2.     On appeal, Trimble argues that the chancellor's decision upholding her non-renewal was not supported by substantial evidence and was arbitrary and capricious. Trimble also claims that OMSD violated Trimble's due process rights by failing to provide a detailed

summary of the reasons for her non-renewal. For the reasons below, we affirm the chancellor's judgment.

## FACTS

¶3. In 2013, OMSD hired Trimble as the business manager for the district. On April 14, 2023, Trimble received a letter from OMSD superintendent Dr. Paul Moton notifying her that her contract with OMSD was not being renewed. The letter stated that Trimble's non-renewal was due to her neglect of duty; specifically:

1. Failure to use professional conduct in violation of Standard I of the Mississippi Code of Ethics.

2. Failure to perform your job duties as the business manager by not paying vendor[s] in a timely manner in violation of Standard 7 of the Mississippi Code of Ethics.

3. Failure to maintain professional relationship with colleagues in violation of Standard 5 of the Mississippi Code of Ethics.

### Board of Trustees Proceedings

¶4. At Trimble's request, the Board held a hearing on the matter pursuant to Mississippi Code Annotated section 37-9-111(1) (Rev. 2019). Trimble retained an attorney to represent her at the hearing, which took place over the course of three days in May 2023. The Board heard testimony from Trimble, Moton, and six OMSD employees.

¶5. Lillian Fair, a secretary at the high school and middle school, testified on behalf of OMSD. Fair described the repeated delays and confusion she experienced when working with the business office. Fair testified that she consistently had problems with Trimble and her staff's unclear and confusing procedures for filling out requisitions (requests for money).

2

Fair also stated that she had difficulty obtaining assistance from the business office to complete requisitions and purchase orders in a timely manner. Fair testified that the poor communication and lack of assistance from the business office resulted in delayed reimbursements. Fair described a specific situation where poor communication between Trimble and her staff led to repeated efforts to complete the same purchase orders.

¶6. Fair also testified that in addition to her secretarial job duties, she was "forced" by the business office to perform certain accounting tasks, including payroll, time sheets, and purchase orders. Fair complained that the time she spent on these additional duties, coupled with the time she spent entering, reentering, and revising requisitions and purchase orders consistently caused her to fall behind on her secretarial duties.

¶7. Sandra Murray, the special education director and gifted coordinator for OMSD, testified that in 2022, she had a special education assistant, Lapasha Hodges, helping her in the classroom. During the summer of 2022, Hodges transported a student to another town for therapy once a week. Murray testified that after the summer, it took an additional two months for Hodges to get paid due to confusion with Trimble and the business office. Murray stated that the business office would change its procedures for requisitions, purchase orders, and reimbursements "out of the blue." Murray also testified about several other instances of delayed payments and the inability to receive effective assistance from Trimble or the business office regarding purchase orders.

¶8. Murray also described another issue that arose during Trimble's tenure as the business manager. Murray explained that OMSD had an account with Food Giant, a grocery store,

3

and teachers would occasionally take students there to let them pick out pantry items they needed to help with basic life skills. On one occasion, teachers tried to purchase items from Food Giant but discovered that OMSD's account was closed. Murray called the manager at Food Giant and learned that the account was closed due to non-payment. Murray asked how they could re-open the account, and the manager told her that the store would not open another account for OMSD.

¶9. Moton, OMSD's final witness, testified regarding Trimble's failure to perform her duties as the business manager. Moton said that his decision not to renew Trimble's contract was due to Trimble's failure to pay invoices and bills on time and because of poor communication between the business office and school employees.

¶10. Specifically, Moton testified that Trimble's process for entering requisitions was not working. Moton stated that he receives "constant complaints about the particular process; and it's overwhelming, and it's tiresome." Moton testified that he receives numerous complaints about Trimble from OMSD employees. Moton explained that Trimble often gave short and unhelpful responses to employees who asked for help, and then Moton would have to get involved. Moton stated that he gave Trimble feedback regarding her communication method and professional relationship with her coworkers. Moton explained that in some situations, an in-person conversation is more helpful than communicating via email, and he encouraged Trimble to have more in-person conversations with other employees.

¶11. Moton discussed an occasion when a teacher's pay was docked without explanation, and he asked Trimble to explain to the teacher why her pay was docked. Trimble informed

4

Moton that she had placed the teacher on family medical leave, but Moton testified that the teacher had not requested family medical leave. Moton stated that the teacher was so frustrated by the situation that she almost quit.

¶12. OMSD submitted into evidence numerous emails that showed late payment of bills by the business office, confusion among OMSD employees regarding the business office's procedures, communication issues between the business office and OMSD employees, and complaints about Trimble and the business office.

¶13. During the hearing, Trimble's attorney claimed that her non-renewal was retaliation for Trimble filing a grievance against Moton and also reporting potential misuse of school property. Relevant to these claims, the record reflects that Trimble filed a grievance against Moton on April 12, 2023—the day before Moton sent Trimble's non-renewal letter.[1] Trimble sent the grievance to Ken McGaha, the assistant superintendent for OMSD, via email. The grievance stated:

> This email is a follow-up to our conversation today around 2:35 pm. I expressed to you that the unprofessionalism exhibited by the Superintendent is unnecessary. I have dealt with this type of behavior since he has been in his position. I have spoken with him before concerning this same matter.

¶14. Trimble filled out a formal grievance form on April 20, 2023. When asked for her proposed solution to her grievance against Moton, Trimble wrote: "*Practice the same expectations that he has for his staff. *Provide a stress free work environment. *Professional open and honest communication. *Allow me to do my job as the Business

---

[1] The non-renewal letter is dated April 13, 2023, but Moton testified that he recalled sending the letter on April 14, 2023.

5

Manager without feeling like I am being bullied by him."

¶15.    When asked about the grievance during the hearing, Moton repeatedly stated that he did not know that Trimble had filed a grievance until May 2023. McGaha also confirmed at the hearing that he did not inform Moton that Trimble had filed the grievance against him.

¶16.    After OMSD rested, Trimble called the following witnesses: McGaha; Peggy Bush, the principal at Okolona Middle School; Annie Simmons, the payroll clerk in the OMSD business office; and Felicia Gilleylen, the accounts payable clerk for the OMSD business office.

¶17.    McGaha described his working relationship with Trimble as "fine." McGaha testified that in his experience, Trimble had been helpful in explaining any issues he had with the requisition process.

¶18.    Bush testified regarding her working relationship with both Moton and Trimble. Bush stated that while she and Trimble were not friends, they got along as co-workers. However, Bush testified that she had a negative relationship with Moton. As for any issues with the business office, Bush testified that sometimes requisitions and purchase orders were denied by the business office. Bush stated that while she did not like it when requests were denied, she understood that Trimble had to make sure that all the rules and policies were followed.

¶19.    Simmons described her working relationship with Trimble as "great." When asked why the school employees are upset about the business office's procedures, Simmons answered, "I think the issue with the process is they just don't want to do it." Gilleylen also testified that Trimble was good at her job.

6

¶20. The Board also heard testimony from Trimble. Trimble testified that she had been employed by OMSD since 2008—first as the accounts payable clerk and technology coordinator, and then as the business manager. Trimble testified that when she first took the position of business manager, OMSD had a little over $283,000 in its fund balance, and after Trimble's first year in the role, the amount increased tremendously.

¶21. Trimble addressed the allegations of delayed bill and invoice payments, explaining that any delay in payment and reimbursement is the result of employees incorrectly filling out the paperwork, despite Trimble providing the employees with training on the process. Trimble stated that she also provided employees with a binder containing the purchasing procedures and account codes to aid them in completing the paperwork. Trimble testified that "[her] job depends on somebody else doing their job," explaining that if employees did not turn in bills or invoices, the business office could not pay those bills or invoices.

¶22. Trimble also claimed that some employees would "manipulate" purchase orders by stamping them at one location and then bringing them to the business office two days later, which made it look like the orders had been sitting at the business office for two days without anyone processing them.

¶23. As for her communication skills, Trimble testified that she communicated via email to create a paper trail to cover her in case an issue arises, explaining that "[there has] been a culture of lying in this district." Trimble also stated that she records all of the meetings she has with other OMSD employees.

¶24. Trimble testified about the confusion with the teacher placed on family medical leave,

explaining that because the teacher had used all her sick leave, the business office had to dock her pay. Trimble also disputed the claim that she failed to pay Food Giant's invoice, stating that she had never received an unpaid invoice or any related correspondence from Food Giant. Trimble testified that when she heard about the issue, she went to Food Giant to figure out what happened. According to Trimble, an employee at Food Giant told her that the store could not find any documentation regarding unpaid invoices.

¶25. Trimble submitted numerous emails and documents into evidence showing that she made attempts to train OMSD employees on business office procedures and that some of the delayed payments and reimbursements were the result of employees failing to properly and timely fill out requisitions and purchase orders.

¶26. Regarding her claim that her non-renewal was retaliatory, Trimble testified that in January 2023, approximately three months before she received her non-renewal letter, she reported a potential misuse of district property. According to Trimble, someone reported that they saw OMSD property—specifically, an air purifier—in the gymnasium of the OMSD maintenance director's church. Trimble went to the church to take photographs of the air purifier and alerted McGaha. According to Trimble, McGaha thanked her for making him aware of the situation and told Trimble that he had informed Moton. Trimble testified that when she did not hear anything else from McGaha or Moton concerning the matter, she reported the air purifier to an auditor, describing it as her duty to the school district. Trimble stated that the auditor came to the business office and asked questions about the air purifier.

¶27. Moton also testified about the air purifier incident. According to Moton, McGaha

informed Moton that he had received an anonymous tip that an air purifier belonging to OMSD was found at the maintenance director's church. Moton contacted the person in charge of OMSD's fixed assets and learned that he had given the maintenance director permission to check out the air purifier from OMSD's inventory. Moton testified that he met with the auditor who came to OMSD to investigate Trimble's report. Moton explained that OMSD ultimately created a new inventory checkout form for school-owned property, which was approved by the auditor.

¶28. After hearing testimony and reviewing exhibits, the Board voted to uphold Trimble's non-renewal.

**Chancery Court Proceedings**

¶29. Trimble appealed the Board's decision to the chancery court pursuant to Mississippi Code Annotated section 37-9-113 (Rev. 2019). After a hearing, the chancellor affirmed the Board's decision, explaining that the Board's decision was supported by substantial evidence and was not arbitrary or capricious. The chancellor also found Trimble's claims that her non-renewal was retaliation for Trimble's grievance against the superintendent and for Trimble's report of potential misuse of school property were not supported by the record. The chancellor also held that Trimble's due process rights were not violated.

¶30. This appeal followed.

**STANDARD OF REVIEW**

¶31. This Court's review of a decision made by an administrative body is limited, and "all levels of review focus on the final decision of the agency." *Langley v. Miss. State Bd. of*

9

*Educ.*, 379 So. 3d 352, 363 (¶41) (Miss. Ct. App. 2023) (quoting *Miss. State Bd. of Contractors v. Hobbs Constr. LLC*, 291 So. 3d 762, 768 (¶12) (Miss. 2020)). Accordingly, we apply "the same standard of review to the Board's decision as that applied by the chancellor." *Id.* In so doing, we "review[] the decision of an administrative agency to determine whether the decision was supported by substantial evidence, was arbitrary or capricious, was beyond the agency's power to adopt, or was violative of a constitutional or statutory provision." *Id.* We must affirm the Board's decision unless it "is unlawful for the reason that it was: (a) Not supported by any substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee." Miss. Code Ann. § 37-9-113(3).

¶32. We further recognize that a rebuttable presumption exists "in favor of the action of an administrative agency and the burden of proof is upon one challenging its action." *Langley*, 379 So. 3d at 363 (¶41). Additionally, "because the administrative agency sits as finder of fact, a reviewing court is obligated to show 'substantial deference' to any determination of credibility or trustworthiness of witness testimony." *Id.*

## DISCUSSION

### I. Whether the Board's decision was supported by substantial evidence and whether it was arbitrary or capricious.

¶33. Trimble asserts that the Board's decision to uphold OMSD's non-renewal of her employment contract was not supported by substantial evidence. Trimble argues that Moton's allegation that she was late paying invoices and bills was disproved by testimony at the hearing showing that the payment delays were due to the failure of other employees

10

to provide proper and timely documentation. Trimble also submits that Moton's allegations that she failed to act professionally or maintain professional relationships were vague, unsupported, and contradicted by colleagues who worked with her.

¶34. Additionally, Trimble asserts that the Board's decision was arbitrary and capricious. Trimble claims that the OMSD failed to follow its progressive discipline policy before not renewing her contract. She also claims that the timing of her non-renewal shows a retaliatory motive based on her grievance against Moton and her reporting a potential misuse of OMSD property.

¶35. As stated, this Court must determine whether the Board's decision not to renew Trimble's employment contract was (1) supported by substantial evidence, (2) arbitrary or capricious, or (3) in violation of some statutory or constitutional right of the employee. Miss. Code Ann. § 37-9-113(3); *Ray v. Lowndes Cnty. Sch. Dist.*, 205 So. 3d 1096, 1098 (¶9) (Miss. Ct. App. 2016). If substantial evidence exists supporting the Board's decision, this Court will affirm. *Id.* "Substantial evidence means more than a scintilla or a suspicion." *Giles v. Shaw Sch. Dist.*, 203 So. 3d 1165, 1169 (¶13) (Miss. Ct. App. 2016). "The terms 'arbitrary' and 'capricious' imply a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.* "We deem an act arbitrary when it occurs not according to reason or judgment, but occurs based on the will alone." *Id.*

¶36. The supreme court has provided the following guidance in non-renewal cases like the one before us: "Once the Superintendent has given a demonstrable reason for non-reemployment (before the hearing), the burden at the hearing is upon the employee to

11

prove *affirmatively and conclusively* that the reasons relied upon by the School [District] have no basis in fact." *Calhoun Cnty. Bd. of Ed. v. Hamblin*, 360 So. 2d 1236, 1240 (Miss. 1978) (emphasis added); *see also Jackson Pub. Sch. Dist. v. Mason*, 295 So. 3d 484, 490 (¶14) (Miss. Ct. App. 2019). In the present case, we find that Moton, acting in his role as superintendent of OMSD, met the requirement of providing a demonstrable reason for his recommendation of non-renewal. In his non-renewal letter, Moton furnished the following reasons for the non-renewal of Trimble's employment contract: neglect of duty, specifically, Trimble's failure to use professional conduct, failure to pay vendors in a timely manner, and failure to maintain professional relationships with colleagues. As discussed above, the Board heard testimony from OMSD's witnesses (Moton, Fair, and Murray) regarding late or unpaid bills and invoices by the business office during Trimble's tenure as business manager. Fair and Murray testified as to confusion and frustration regarding Trimble's procedures for requisitions and purchase orders. Moton also testified about Trimble's poor communication with OMSD employees and the employees' frustrations and complaints with the business office. OMSD submitted into evidence emails that documented confusion regarding procedures in the business office and delays in reimbursements and payments. Because OMSD provided a demonstrable reason for Trimble's non-renewal, "the burden at the hearing is upon [Trimble] to prove affirmatively and conclusively that the reasons relied upon by [OMSD] have no basis in fact." *Calhoun,* 360 So. 2d at 1240.

¶37. We acknowledge that during the hearing, Trimble and other employees testified that Trimble was good at her job, that she communicated well, and that delays in payment were

often the result of the employees' failure to properly fill out or timely submit paperwork. Trimble also submitted numerous documents and emails showing that she offered training and guidance to OMSD employees regarding business office procedures and that some employees failed to properly and timely follow procedures for requisitions and purchase orders. However, this testimony and evidence do not meet the burden of affirmatively and conclusively proving that OMSD's reasons for non-renewal were not supported by the facts.

¶38. We also find that the record does not support Trimble's claim that the Board's decision upholding her non-renewal was arbitrary or capricious. In support of her claim, Trimble submits that she never received any written reprimands or performance-improvement plans prior to her non-renewal, and therefore the Board's decision not to renew her contract was arbitrary.[2] However, Trimble's argument "is not supported by Mississippi law or the record." *Langley*, 379 So. 3d at 365 (¶52). As this Court explained in *Langley*, "Mississippi Code Annotated section 37-18-7 (Rev. 2019) refers to the development of a 'professional development plan' for '[employees] who are identified as needing improvement[.]' [However,] this statute applies only to designated 'Schools at Risk.'" *Id*. In the present case, as in *Langley*, there is no evidence to show that any schools in the OMSD were designated as "Schools at Risk" at the time of Trimble's non-renewal.

¶39. Trimble also claims that the reasons given for her non-renewal were pretext for retaliation. "If the reasons for non-renewal are a sham, or are a retaliation for the employee's

---

[2] At the hearing, Moton was asked why he did not place Trimble on an improvement plan or provide her with communication training. Moton answered, "I initially tried to give her feedback on different things, and it didn't seem to be working."

13

constitutionally protected activity, the Board acts arbitrarily and capriciously." *Giles*, 203 So. 3d at 1169 (¶13). Trimble argues that the timing of her contract not being renewed shows that the non-renewal was in retaliation for her filing a grievance against Moton and reporting a potential misuse of school property. However, we find that these allegations are not supported by the record.

¶40. Trimble received Moton's non-renewal letter approximately two days after she emailed McGaha to complain about Moton's unprofessional behavior and three months after she reported that an air purifier belonging to OMSD was seen in the maintenance director's church gymnasium. Moton testified that he had no knowledge of Trimble's grievance at the time he sent the non-renewal letter, and McGaha confirmed that he did not inform Moton of Trimble's grievance. Trimble also did not provide any evidence to show that her report regarding the district's air purifier was causally related to her non-renewal.

¶41. After our review, we find that the Board's decision, which was affirmed by the chancellor, was supported by substantial evidence and was not arbitrary or capricious.

## II. Whether OMSD violated Trimble's due process rights.

¶42. Finally, Trimble argues that her due process rights were violated by OMSD's failure to provide a detailed summary of the reasons for her non-renewal.

¶43. Mississippi Code Annotated section 37-9-109 provides, in pertinent part:

> An employee who has received notice under Section 37-9-105, upon written request from the employee received by the district within ten (10) days of receipt of the notice by the employee, shall be entitled to:
>
>> (a) Written notice of the specific reasons for nonreemployment, together with a summary of the

14

factual basis therefor, a list of witnesses and a copy of documentary evidence substantiating the reasons intended to be presented at the hearing, which notice shall be given at least fourteen (14) days prior to any hearing; . . .

(b)     An opportunity for a hearing at which to present matters relevant to the reasons given for the proposed nonreemployment, including any reasons alleged by the employee to be the reason for nonreemployment . . . .

Miss. Code Ann. § 37-9-109(a)-(b) (Rev. 2019).

¶44.    In the April 13, 2023 non-renewal letter, Moton, on behalf of OMSD, set forth the reasons that Trimble's contract would not be renewed. The letter also informed Trimble of her rights under section 37-9-109, including that upon her request, she would be provided with written notice of the specific reasons for non-reemployment and a summary of the factual basis for it, as well as a hearing.

¶45.    Upon receipt of her non-renewal letter, Trimble emailed Moton and McGaha and notified them of her request for a hearing on her proposed non-renewal.

¶46.    On April 25, 2023, OMSD provided Trimble with a letter notifying her of the scheduled date of her non-renewal hearing. The letter also included the list of OMSD's prospective witnesses, the specific areas of non-renewal reasons the witnesses would address, and the documents identified and reserved by OMSD to introduce at the hearing. Specifically, the letter notified Trimble that Moton would testify concerning "[Trimble's] failure to timely perform her job duties"; "the complaint from the faculty and staff about getting the money they request in a timely manner"; "requisitions not being entered in a timely manner"; and Trimble's "lack of workplace professionalism." The letter further stated

that Fair would testify "concerning her role as the high school secretary" and "about how requisitions were not done in a timely manner[,]" and the letter stated that Murray would testify "regarding her role as the Special Education Director for [OMSD]" and "concerning the timeliness of her requisitions being uploaded."

¶47. On appeal, Trimble argues the reasons listed for her non-renewal were "insufficiently specific to comport with due process." Trimble claims that OMSD was required to provide her with a detailed summary of the reasons for her non-renewal. However, as the chancellor explained below, the term "detailed" is not included in the language of section 37-9-109. Furthermore, after reviewing the record, we find that OMSD complied with the requirements of section 37-9-109. OMSD also provided Trimble an opportunity to be heard, and the record shows that Trimble actively participated in a formal hearing, which occurred over multiple days. Accordingly, we find that Trimble's due process rights were not violated.

## CONCLUSION

¶48. We find that the Board's decision was supported by substantial evidence, not arbitrary or capricious, and not in violation of a statutory or constitutional right of Trimble. As such, we affirm the chancellor's judgment.

¶49. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

16